UNITED STATES, Appellee

v

ROBERT F. BROWN, Airman Third Class, U. S. Air Force, Appellant

8 USCMA 18, 23 CMR 242

*Captain Norman J. Nelson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of the wrongful disposition of an Air Force parka alleged to be "military property of the United States," and of the larceny of the same article at the same time, in violation of Articles 108 and 121, Uniform Code of Military Justice, 10 USC §§ 908 and 921 respectively. We granted review to consider whether the charges are multiplicious.

On February 10, 1956, the accused desired to spend the night with a lady of pleasure. He had no funds. However, she agreed to accept, as security for payment, a parka which had been issued to the accused as part of his military equipment. The pledge was to be redeemed on pay day, which was about a week later. Pay day passed without action by the accused. In May, the accused was directed to turn in his parka to base supply. Thereupon, he attempted to reclaim the garment from his lady friend. He learned that she had sold it about a month after the date agreed upon for redemption. As a result, the accused was charged with the wrongful disposition of military property by pawning, and with the larceny of the same property by the same act.

For the purpose of punishment, offenses are, in a general way, considered to be separate, if each has an element of proof not required for the proof of the other. United States v Larney, 2 USCMA 563, 10 CMR 61. In pertinent part, Article 108 provides that any person subject to the Uniform Code who, without proper authority, "sells or otherwise disposes of . . . any military property" of the United States shall be punished as a court-martial may direct. Under Article 121, any person subject to the Code who "wrongfully takes . . . or witholds, by any means, from the possession of the owner or of any other person any . . . article of value of any kind . . . with intent permanently to deprive . . . another . . . of the use and benefit . . . or to appropriate it to his own use or the use of" another, is guilty of larceny; or, if his intent is temporarily to deprive the owner or possessor of the use or benefit of the article, he is guilty of wrongful appropriation.

On first reading, it would seem that each offense requires proof of a fact not required for proof of the other. Thus, Article 108 requires that the property be military property, a fact which is not essential to the proof of an Article 121 offense; and the latter requires proof of a specific intent, a fact not essential to the proof of a charge under Article 108. More critical analysis, however, reveals the differences to be illusory when applied to a situation in which there is but one act by the accused. No example has been presented to us, nor have we been able to imagine one, in which the disposition of the property of another does not disclose an intent to transfer ownership or possession either temporarily or permanently. In United States v Kubel, 1 USCMA 645, 5 CMR 73, we considered the factual inference that could be drawn from the sale of property. We there said (page 648):

". . . An unconditional sale is generally understood to imply a transfer of ownership with the purchaser acquiring the right to deal with the property as his own. Implicit in such a transaction is an intent to forever deprive the true owner of his property. Particularly is this true when the sale is conducted surreptitiously."

Similar reasoning applies in the case of other absolute dispositions, as, for example, a gift or an exchange. So, too, if the accused transfers less than absolute ownership, his act necessarily supports the inference that he intended temporarily to deprive the owner of the use or benefit of the property.

From the standpoint of proof, therefore, there is no difference between the two offenses. Evidence sufficient to establish an act of wrongful disposition would be sufficient to prove the accused's intent. Thus, aside from the character of the property, inevitably the "evidence sufficient for conviction under the first charge would . . . have convicted under the second." Gavieres v United States, 220 US 338, 343, 55 L ed 489, 31 S Ct 421 (1911). See also United States v Redenius, 4 USCMA 161, 15 CMR 161; Normandale v United States, 201 F 2d 463 (CA 5th Cir) (1953). And, when we add the property element, the interrelation of the two offenses is even more forcefully presented. Here, both charges allege that the parka was "military property of the United States." Apparently realizing that this allegation raises the question of the imposition of punishment for both a principal and a lesser included offense, the Government argues that the allegation was "superfluous . . . to the proof" of the larceny. Rejecting a somewhat similar argument in another multiplicity case we said:

". . . While an allegation of an aggravating factor may be surplusage to a principal offense, it may satisfy an element of the lesser. Therefore, we conclude that where, as here, the allegations of the specification are broad enough to permit proof of the use of a deadly weapon, and its use constitutes the force and violence of the robbery charge, an aggravated assault is a lesser crime included within the latter." [United State v McVey, 4 USCMA 167, 174, 15 CMR 167.]

Unquestionably, Congress can make "each stick in a faggot a single criminal unit," but when it is doubtful as to whether it intended to do so, the doubt should be "resolved against turning a single transaction into multiple offenses." Bell v United States, 349 US 81, 83–84, 99 L ed 905, 75 S Ct 620 (1955). The difference between the sale or other unauthorized disposition provision of Article 108 and the general provisions of Article 121, when only one act is committed is a difference more of form than of substance. We are persuaded then that when a single act violates both Articles, it was not intended that the offender be subjected to two punishments.[1] We hold, therefore, that the charges are multiplicious.

The sentence is set aside. The record of trial is returned to The Judge Advocate General of the Air Force for resubmission to a board of review for

---

[1] In reaching this conclusion, we have not overlooked the fact that under the Table of Maximum Punishments prescribed by the President, a wrongful disposition of a temporary nature, as, for example, a loan or pledge (see Winthrop, Military Law and Precedents, 2d ed, 1920 Reprint, pages 698, 708–709) carries a more severe penalty than that for a violation of Article 121. However, the considerations that may flow from this difference have no bearing upon our problem. Under the Uniform Code, the President has the responsibility of fixing the limits of punishment (Article 56, Uniform Code of Military Justice, 10 USC § 856), and he has, in other instances, predicated the punishment upon the nature of the property involved. Thus, misappropriation of property of a value of more than $50.00 is punishable, in part, by a bad-conduct discharge and confinement for not more than six months, while misappropriation of a motor vehicle subjects the offender to a dishonorable discharge and confinement at hard labor for two years.

redetermination of an appropriate sentence in the light of this opinion.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The heart of the Court's opinion is found in two statements: "We are persuaded then that when ▮▮▮▮▮ a single act violates both Articles, it was not intended that the offender be subjected to two punishments," and "The difference between the sale or other unauthorized disposition provision of Article 108 and the general provisions of Article 121, when only one act is committed is a difference more of form than of substance." Of course, Congress decided to the contrary, for it made disposition of military property an offense under Article 108 of the Code with an appropriate sentence, and it made larceny and wrongful appropriation different offenses under Article 121 with some variation in maximum sentences. In addition, these Articles rather pointedly suggest a departure from the view that is expressed by my associates that we are merely dealing with a matter of form.

In the majority opinion, I do not find one case cited which supports the conclusion reached. Moreover, it is interesting to consider the rationale of Gavieres v United States, 220 US 338, 55 L ed 489, 31 S Ct 421, and Normandale v United States, 201 F 2d 463 (CA 5th Cir) (1953), cited by the Court, for if these cases support the views expressed by my associates, then I misread their language. In the former, I find these statements in summation of the holding: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." And in the same case: "While it is true that the conduct of the accused was one and the same, two offenses resulted, each of which had an element not embraced in the other."

In the latter, this quotation is illuminating: "The same course of conduct upon the same occasion may result in separate offenses and be separately punished."

Bell v United States, 349 US 81, 99 L ed 905, 75 S Ct 620 (1955), the last case cited by the majority, involved the single issue of whether transporting two women for immoral purposes on a single trip permitted punishment for two offenses. The prosecution alleged and relied on the violation of a single statute, and there was no issue involving the offending against separate penal acts. My interpretation of that case leads me to believe that it offers no help in this situation.

As I understand the rule set out in the Manual and affirmed by us, it is this:

"The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. . . . An accused may not be punished for both a principal offense and for an offense included therein. . . ." [Paragraph 76a (8), page 123.]

That rule finds unanimous support in the Federal courts, and on multiple occasions it has been applied by the United States Supreme Court. In United States v McVey, 4 USCMA 167, 15 CMR 167, a great many cases which lend support to the principle are cited. I prefer to accept that rule, and if it is applied in this instance, it is crystal clear that disposing of military property requires proof of an element not required in larceny, and the latter offense requires proof of an element not required in the former crime. The rule is not rendered inapplicable just because it happens that a single act established both. If it does, then the cases

**21**

cited by the writer in United States v McVey, *supra*, and those mentioned by my associates in this case were decided incorrectly.